**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**LORD VERSATILE,**

       **Petitioner,**

   **v.**                                     **Civil Action No.  3:25CV452**

**CHADWICK DOTSON,**

       **Respondent.**

### <u>MEMORANDUM OPINION</u>

Lord Versatile,[1] a Virginia state prisoner proceeding *pro se*, brings this petition pursuant

to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging the revocation of his parole and

other aspects of the Virginia Parole Board's ("VPB") decisions about parole.  In his § 2254

Petition, Versatile argues entitlement to relief based upon the following claims:[2]

| | |
|---|---|
| Claim A: | "On or about June 21, 2023, Petitioner learned that his mandatory parole had been revoked by the . . . VPB.  This revocation of Petitioner's mandatory parole violated the Ex Post Facto Clause and the fact that the VPB waited approximately three (3) years after Petitioner was sentenced to a net sentence of nine (9) months to revoke Petitioner's parole [which] violated Petitioner's procedural due process in violation of the Fourteenth Amendment . . . ."  (*Id.* at 4, 11.) |
| Claim B: | "The VPB violated Petitioner's procedural due process and the Equal Protection Clause of the Fourteenth Amendment, and Va. Const. (due process) when the VPB failed to consider Petitioner for discretionary parole for four (4) straight years, once he became eligible for parole consideration on November 11, 2022."  (*Id.* at 5.)  Versatile learned this when "he received his legal update sheet . . . on June 21, 2023."  (*Id.* at 11.) |

---

[1] Lord Versatile is also known as Venson Leon Coward.  (*See* ECF No. 19-1 ¶ 3.)

[2] The Court corrects the spelling, punctuation, and capitalization in the quotations from Versatile's submissions.  The Court employs the pagination assigned by the CM/ECF docketing system.

Claim C: "The VPB on January 9, 2024, arbitrary and capricious, denied Petitioner discretionary parole without first notifying him of his scheduled parole hearing date, and without affording Petitioner a personal interview as required by VPB policy, in violation of Petititoner's procedural due process and the Equal Protection Clause of the Fourteenth Amendment and Const. of Va. while other inmates/offenders who were similarly situated at Lunenburg Correctional Center were notified of their parole hearing date and given a personal interview by the VPB." (*Id.* at 7, 11.)

Claim D: Petitioner is being illegally detained in violation of Va. Code Ann. § 53.1-151 . . . . Petitioner is being detained for the offense in which he was released on 'mandatory parole' as his primary term of imprisonment by the VPB and [Virginia Department of Corrections ("VDOC")], in violation of the Ex Post Facto Clause, Fourteenth Amendment, and due process under Const. of Virginia." (*Id.* at 8, 11.)

Respondent filed a Motion for Summary Judgment arguing that Claims A, B, and D are procedurally defaulted and barred from review here, that all four claims are barred by the federal statute of limitations, and that all four claims lack merit.[3]  The Court provided Versatile with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  Versatile filed a Response.  (ECF No. 28.)[4]  For the reasons articulated below, the Motion for Summary Judgment (ECF No. 18) will be GRANTED.

---

[3] Initially, Respondent filed a Motion to Dismiss that failed to comply with Rule 5 of the Rules Governing § 2254 Cases and therefore, the Court denied it without prejudice.  (ECF No. 16, at 1.)  The Motion to Dismiss was supported by two affidavits.  (*See* ECF No. 10–1; ECF No. 10–2.)  By Memorandum Order entered on December 11, 2025, the Court explained that "if Respondent wishe[d] the Court to consider any affidavit or other evidence in support of his motion, he must file a motion for summary judgment."  (ECF No. 16, at 3.)  On January 9, 2026, Respondent filed a Motion for Summary Judgment that is before the Court for review here. (ECF No. 18.)

[4] Versatile's initial response suggested that in February of this year, he had not received a copy of the Motion for Summary Judgment. (ECF No. 24, at 3.)  Versatile appears to have made no attempt to receive a copy of the Motion for Summary Judgment between February and May. Nevertheless, by Memorandum Order entered on May 7, 2026, the Court directed Respondent to mail copies of the Motion for Summary Judgment and corresponding documents to Versatile and permitted Versatile thirty (30) days in which to file his response.  (ECF No. 26.)  Versatile has filed a Response.  (ECF No. 28.)

## I.       STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is

---

In his Response, the Court notes that instead of providing fulsome arguments in opposition to the Motion for Summary Judgment, Versatile mostly refers back to his response ("Response to MTD") to Respondent's prior Motion to Dismiss that was denied (*see supra* n.2) for his arguments. (*See, e.g.*, ECF No. 28, at 4.) It was incumbent upon Versatile to file a proper response to the Motion for Summary Judgment. The Court is neither inclined nor required to scour the record for Versatile's arguments in opposition. Nevertheless, the Court has reviewed the entire Response to MTD and finds it has no impact on the Court's conclusions.

any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Respondent has submitted:  1) the affidavit of Donna M. Shiflett, Manager of the Court and Legal Services Unit for the VDOC (ECF No. 19-1, at 1–4); 2) relevant state court criminal records and institutional records from the VDOC (ECF No. 19-1, 5–20); 3) the affidavit of Michelle Dermyer, a member of the VPB (ECF No. 19-2, at 1–6);[5] and, 4) relevant records from the VPB (ECF No. 19-2, at 7–32).

At this stage, the Court is tasked with assessing whether Versatile "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Although Versatile filed a Response to the Motion for Summary Judgment (ECF No. 28), he failed to submit a sworn statement or affidavit with it. Nevertheless, in the Response to MTD, Versatile filed an Affidavit (ECF No. 15-1), and he submitted records with his initial § 2254 petition (ECF No. 1-1), and with his Response to MTD (ECF No. 15-2 through 15-10). The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The

---

[5] The Court cites to the paragraph numbers for both affidavits.  The Court cites to the attached records by their page number.

sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). Accordingly, the Court is not bound by any legal conclusions or speculative allegations contained in Versatile's Affidavit. *See United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (explaining that "[a]iry generalities" and "conclusory assertions ... [do] not suffice to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing" (alterations in original) (some quotation marks omitted) (citation omitted)).

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Versatile.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Versatile's Original Sentence and Release on Mandatory Parole

On February 25, 1986, the Circuit Court for the City of Richmond convicted Versatile of first-degree murder and sentenced him to fifty years of incarceration, and of use of a firearm and sentenced him to two years of incarceration to run consecutively. (ECF No. 19-1, at 5.) On May 27, 1986, Versatile became a state inmate incarcerated in the VDOC. (ECF No. 19-1 ¶ 4.) On February 7, 2017, Versatile was released on mandatory parole pursuant to section 53.1-159 of the Virginia Code. (*Id.* ¶ 5.)[6] That statute required that inmates who are released on mandatory parole and who subsequently violate the terms of parole and are reincarcerated may not be released on mandatory parole again for the same sentence. (*Id.*) At the time of Versatile's

---

[6] The Court generally omits the secondary citations in the record.

release on mandatory parole, he had seven months and nineteen days left to serve on his sentences from which he was mandatorily paroled. (*Id.* ¶ 6.) However, to reach his mandatory parole date, Versatile received the benefit of earning twenty years, one month, and three days of good time credits that reduced the time that he was required to spend in prison. (*Id.*) At the time of his release, Versatile signed the Virginia Parole Order of Release and Conditions of Mandatory Parole, which set forth the conditions of his parole supervision. (ECF No. 19-2, at 9.)

**B.      Versatile's Violation of the Terms of Mandatory Parole**

On March 12, 2020, Versatile's parole officer issued a Major Violation Report that stated as follows:

> a.      On October 25, 2019, Versatile was arrested in Henrico County on charges of Embezzlement of More than $500, two counts of Assault on Law Enforcement, Possession of Schedule I or Schedule II Controlled Substance, and Obstruction of Justice. Versatile was released on bond from the Henrico County Jail on November 14, 2019. He was indicted for these charges on March 9, 2020.
> b.      On December 3, 2019, Versatile was arrested on an outstanding warrant from the City of Richmond for charges of Receiving or Buying Stole[n] Goods of More than $500. He was released from custody from the Richmond City Justice Center on December 10, 2019. This charge was Nolle Prosequi in the Richmond City General District Court on January 8, 2020.
> c.      On March 2, 2020, Versatile was indicted in the Richmond City Circuit Court on charges of First Degree Murder, Use of a Firearm in the Commission of a Felony, and Possession of a Firearm by a Violent Felon.

(ECF No. 19-2 ¶ 6.) In accordance with the Major Violation Report, on March 12, 2020, the Parole Board issued a PB-14 warrant.[7] (*Id.*)

On April 15, 2020, during a preliminary hearing, a hearing officer determined that probable cause existed that Versatile violated Condition 1 of his parole release requiring him to

---

[7] Respondent does not provide a definition for a VPB PB-14 warrant. However, Respondent included a copy of the warrant, and it appears that such a warrant was issued by the VPB for a parole violation. (*See* ECF No. 19-2, at 1.)

obey all state, federal, and local laws and ordinances.  (ECF No. 19-2, at 14–16.)  The hearing

officer referred the matter to the VPB for further action.  (*Id.* at 16.)

On July 8, 2020, Versatile appeared in the Henrico Circuit Court and entered into guilty

pleas for embezzlement, assault or battery, and possession of a Schedule I or II controlled

substance.  (ECF No. 19-2 ¶ 8.)  Versatile was sentenced to seven years of imprisonment with all

but nine months suspended.  (*Id.*)  However, after a trial in the City of Richmond Circuit Court,

Versatile was found not guilty of first-degree murder and use of a firearm in the commission of a

felony, and on April 12, 2023, the Commonwealth nolle prossed the possession of a firearm by a

violent felon charge.  (*Id.* ¶ 9.)

### C.    Versatile's Parole Proceedings

VPB Parole Board member Michelle Dermyer explains that "[t]he Parole Board cannot

conduct revocation proceedings for parole violations until all outstanding criminal charges are

resolved."  (*Id.* ¶ 10.)  Versatile's pending charge for possession of a firearm by a violent felon

was not resolved until April 12, 2023, when it was nolle prossed by the Commonwealth.  (*Id.*)

Accordingly, on April 13, 2023, the VPB sent Versatile a Statement of Alleged Parole/ Post-

Release Violations requiring him to appear before the VPB for his violation of Condition 1 based

on his convictions in Henrico, and Versatile completed the form the following day.  (*Id.* ¶ 11;

ECF No. 19-2, at 17–18.)  Versatile's parole violation hearing was held on June 8, 2023, and

Versatile was found guilty.  (*Id.* ¶ 12.)  On June 9, 2023, the VPB sent Versatile a letter

memorializing that he was found guilty of a parole violation and explaining that the VPB

revoked his parole.  (ECF No. 19-2, at 19.)  The VPB imposed the twenty years, one month, and

three days of incarceration that was left for Versatile to serve.  (ECF No. 19-2 ¶ 12.)  Pursuant to

Virginia law, "all time not physically served on applicable sentences prior to an inmate's release

on mandatory parole will be served. Versatile is therefore required to serve 20 years, 1 month and 3 days" as "[t]his is the time that he did not physically serve prior to his release on mandatory parole on February 7, 2017." (*Id.* ¶ 13.)

Versatile was held in jail from March 27, 2020, until June 9, 2023, when he once again became a VDOC offender. (ECF No. 19-2, at 27.)

### D.    Consideration for Discretionary Parole

Currently, Versatile's projected Good Time Release Date is July 17, 2035; however, "[t]his projected date assumes that he will continue to earn good time at his present earning level." (*Id.* ¶ 14.) In his VDOC records, Versatile's "Discretionary Parole Eligibility" date is reflected as November 13, 2020. (*Id.* ¶ 20.)[8] However, at that time, Versatile was serving his nine-month active term of incarceration for the three convictions in Henrico County, he remained detained on the VPB PB-14 warrant and was also detained for the pending charges in the City of Richmond. Thus, Versatile could not be considered for discretionary parole until the pending matters had been resolved. (ECF No. 19-2 ¶ 15.)

---

[8] Although it is not clear from the record why he would be eligible for discretionary parole as of November 13, 2020, the Court notes that Versatile was detained in a regional jail as of March 27, 2020. (ECF No. 19-2, at 27.)

Section 53.1-154 of the Virginia Code[9] requires the VPB to consider individuals who are eligible for discretionary parole annually.  The VPB conducts a one-time informal review of an inmate's progress within six months of the revocation of parole.  (ECF No. 19-2 ¶ 16.)  This informal review does not involve an interview.  (*Id.*)  The VPB notified Versatile by letter dated January 10, 2024, of its decision not to grant him parole.  (ECF No. 1-1, at 11–12.)

Versatile had his interview for his first annual discretionary parole review on May 14, 2024, and was notified on September 19, 2024, of the VPB's decision not to grant him parole. (ECF No. 19-2 ¶ 17; ECF No. 19-2, at 29–30.)  On May 1, 2025, Versatile was again interviewed for his annual discretionary parole review, and was notified on July 31, 2025, of the VPB's decision to not grant him parole on July 31, 2025.  (ECF No. 19-2 ¶ 17; ECF No. 19-2, at 31–32.)

### D.    Versatile's Litigation of his Claims in State Court

On December 9, 2024, Versatile filed a petition for writ of habeas corpus in the Supreme Court of Virginia raising the same claims as he brings in this § 2254 petition.  (ECF No. 17-1, at 3–9.)  On March 27, 2025, the Supreme Court of Virginia dismissed the petition and explained that "claims A, B, and D were not filed within one year after the alleged causes of action

---

[9] That statute states in relevant part:

> The Virginia Parole Board shall by regulation divide each calendar year into such equal parts as it may deem appropriate to the efficient administration of the parole system.  Unless there be reasonable cause for extension of the time within which to review and decide a case, the Board shall review and decide the case of each prisoner no later than that part of the calendar year in which he becomes eligible for parole, and at least annually thereafter, until he is released on parole or discharged, except that upon any such review the Board may schedule the next review as much as three years thereafter, provided there are ten years or more or life imprisonment remaining on the sentence in such case. . . .

Va. Code Ann. § 53.1-154 (West 2026).

9

accrued. Code § 8.01-654(A)(2)." (ECF No. 17-1, at 55.) The Supreme Court of Virginia

further determined that Claim C, "which challenges the Virginia Parole Board's denial of

discretionary parole, is barred because the writ is not available to secure a judicial determination

of any question which, even if determined in petitioner's favor, could not affect the lawfulness of

his custody and detention." (*Id.* (citation omitted).)

### III. EXHAUSTION AND PROCEDURAL DEFAULT

#### A. Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner

must first have "exhausted the remedies available in the courts of the State." 28 U.S.C.

§ 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in

Congressional determination via federal habeas laws "that exhaustion of adequate state remedies

will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D.

Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of

exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations

of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation

marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state

remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838,

844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes

that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the

courts of the State . . . if he has the right under the law of the State to raise, by any available

procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an

adequate opportunity to address the constitutional claims advanced on federal habeas. "To

provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in

each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[10] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a

---

[10] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

In Virginia, to exhaust state remedies, a "petitioner must present the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587 (E.D. Va. 2006); *see also* Va. Code Ann. § 8.01-654 (A) (1) (West 2020). "Whichever route the inmate chooses to follow, it is clear that [the inmate] ultimately must present his [federal habeas] claims to the Supreme Court of Virginia and receive a ruling from that court before a federal district court can consider them." *Banks v. Johnson*, No. 3:07CV746–HEH, 2008 WL 2566954, at *2 (E.D. Va. June 26, 2008) (second alteration added) (quoting *Graham v. Ray*, No. 7:05CV00265, 2005 WL 1035496, at *2 (W.D. Va. May 3, 2005)); *see also Sparrow*, 439 F. Supp. 2d at 587.

### B.    Claims A, B, and D are Barred from Review Here

The Supreme Court of Virginia found Claims A, B, and D untimely filed pursuant to section 8.01–654(A)(2) of the Virginia Code.[11]  Virginia's statute of limitations for habeas actions is an adequate and independent procedural rule when so applied.  *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Sparrow*, 439 F. Supp. 2d at 587–88.  Versatile fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of

---

[11] This statute provides:

> A habeas corpus petition . . . , other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues.

Va. Code Ann. § 8.01–654(A)(2) (West 2026).

justice.[12]  Thus, Claims A, B, and D are defaulted and are barred from review here.

Accordingly, Claims A, B, and D are DISMISSED.

### IV.    MERITS REVIEW OF CLAIM C

In Claim C, Versatile argues: "The VPB on January 9, 2024, arbitrary and capricious,

denied Petitioner discretionary parole without first notifying him of his scheduled parole hearing

date, and without affording Petitioner a personal interview as required by VPB policy, in

violation of procedural due process and the Equal Protection Clause of the Fourteenth

Amendment and Const. of Va. while other inmates/offenders who were similarly situated at

---

[12] Versatile seemingly suggests that it was wrong for the Supreme Court of Virginia to find his claims untimely as cause because he was diligently pursuing his claims.  As a preliminary matter, federal courts "are not at liberty to question a state court's application of a state procedural rule." *Burket v. Angelone*, 208 F.3d 172, 184 (4th Cir. 2000) (citation omitted). Accordingly, to the extent Versatile argues that the Supreme Court of Virginia improperly applied its own law, that is not reviewable here.  *See id.*

Generously construing Versatile to argue that his diligent pursuit of his claims amounts to "cause" for his default, that argument also fails.  At most, Versatile indicates that he "first initiated habeas relief for violations against the Virginia Parole Board on September 6, 2023," in the Circuit Court of Henrico County, and that he did not learn the petition had been dismissed until August of 2024.  (ECF No. 15-1 ¶ 22.)  However, Versatile admits that his "claims were not the exact same as in this current action."  (*Id.*; *see also* ECF No. 15-6 ¶ 3 (noting that Versatile's suit alleged that "the VPB revoked his parole illegally, as allegedly only one board member voted in revocation of Versatile's parole").  Therefore, Versatile fails to show that he was diligently pursuing the claims presented in his § 2254 petition.

Moreover, "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded [petitioner's] efforts to comply with the State's procedural rule." *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (citation omitted).  Versatile's own actions led to the untimely filing of his habeas petition before the Supreme Court of Virginia. Versatile fails to demonstrate cause and prejudice for the default of his claims.

Finally, Versatile also vaguely suggests that because the Supreme Court of Virginia failed to review the merits of his claim, this Court must review his claims to prevent a miscarriage of justice.  (ECF No. 15, at 15.)  However, this is not an "extraordinary case," required to invoke the fundamental miscarriage of justice exception.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("explicitly t[ying] the miscarriage of justice exception to the petitioner's innocence").

Lunenburg Correctional Center were notified of their parole hearing date and given a personal interview by the VPB." (ECF No. 1, at 7, 11.)

### A. Due Process Claim

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Where government action affects a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible[,] . . . not all situations calling for procedural safeguards call for the same kind of procedure").

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "With no constitutional right to parole *per se*, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (quoting *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991)). The United States Court of Appeals for the Fourth Circuit consistently has found the pertinent Virginia statutes governing release on discretionary parole fail to create a protected liberty interest in *release* on parole. *See Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012) (citing *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991); *Vann*, 73 F.3d at 522.

14

Virginia, however, has created a limited liberty interest in *consideration* for parole. *Burnette*, 687 F.3d at 181; *Burnette v. Fahey*, No. 3:10CV70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010). "The question thus becomes what procedures are required under the Due Process Clause in [considering] an inmate for discretionary release on parole." *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (citation omitted). The Fourth Circuit has stated that the Constitution requires only a very limited amount of process in considering an inmate for parole. Specifically, "[a]t most, . . . parole authorities must furnish to the prisoner a statement of its reasons for denial of parole." *Burnette*, 687 F.3d at 181 (alteration and omission in original) (citation omitted) (internal quotation marks omitted). "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." *Burnette*, 2010 WL 4279403, at *8 (citation omitted).

Here, in Claim C, Versatile does not allege that the VPB failed to provide him with an adequate basis for the denial of his parole. Rather, Versatile contends that the VPB violated his due process rights by failing to notify him of his January 9, 2024 parole review date and failing to conduct a personal interview with Versatile as allegedly required by VPB policy. However, with respect to Versatile's contention that the VPB "deviated from . . . state procedural requirement[s]" to notify him of his parole hearing date and to conduct a personal interview, "such . . . omission[s] fail to give rise to a federal due process claim." *Stone v. Chapman*, No. 3:22cv663, 2023 WL 3632724, at *4 (E.D. Va. May 24, 2023) (citation omitted). While "inmates may have some interest in parole consideration generally, it is clear that there is 'no protected interest in the *procedures themselves*, only the subject matter to which they are directed." *Hill v. Jackson*, 64 F.3d 163, 170 (4th Cir. 1995) (citation omitted). "Because . . . inmates . . . have no liberty interest in parole release under Virginia law, neither can they have

15

any liberty interest in the underlying procedures governing parole determination, so long as the procedures themselves satisfy due process." *Id.* at 171 (citation omitted).  In explaining that the Virginia parole statutes do not create a liberty interest in release, the Fourth Circuit explained:

> [p]rocess only assumes significance in a context.  The notion that naked process itself takes on constitutional dimensions has most troublesome implications. Courts have explicitly and repeatedly rejected the proposition that an individual has an interest in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection. . . . "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." . . . [T]he mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause. . . .  Such state procedural requirements must be enforced in state courts under state law.

*Id.* (alterations and omissions in original) (quoting *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 648–49 (D.C. Cir. 1987)).

Here, Versatile argues that the VPB failed to notify him of his January 9, 2024 parole review date and failed to conduct a personal interview in violation of an alleged VPB policy.[13] At most, these alleged deviations involve a state procedural requirement.  "Because [Versatile's] 'right' to annual parole review here is a procedural function of Virginia's parole scheme rather than a substantive right unto itself, the Constitution does not afford that 'right' any protection under the Due Process Clause." *Id.*; *cf. Miller v. Bennett*, No. 7:19–cv–0642, 2021 WL 3698884, at *4 (W.D. Va. Aug. 19, 2021) ("As a general rule, the Parole Board is required to consider

---

[13] Versatile received notice of and was interviewed for his first annual discretionary parole review on May 14, 2024, and was notified on September 19, 2024, of the VPB's decision not to grant him parole.  (ECF No. 19-2 ¶ 17; ECF No. 19-2, at 29–30.)  On May 1, 2025, Versatile was again interviewed for his annual discretionary parole review, and was notified on July 31, 2025, of the VPB's decision to not grant him parole on July 31, 2025.  (ECF No. 19-2 ¶ 17; ECF No. 19-2, at 31–32.)  Versatile only takes issue with the initial decision denying parole on January 10, 2024.

16

parole-eligible inmates on an *annual* basis. *See* Va. Code §53.1-154. This statutory requirement, however, does not give rise to a protected liberty interest.") Simply put, "[i]f a state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue." *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990). Instead, Versatile should have sought to enforce these alleged procedural rights in the Virginia courts, under Virginia law. *Burnette*, 2010 WL 4279403, at *10 (citations omitted). In this instance, Versatile has received all of the process that the Constitution requires. Accordingly, Versatile's due process claim is meritless and will be DISMISSED.

### B.    Equal Protection Claim

Second, to the extent Versatile brings Claim C as an equal protection challenge, his claim also lacks merit. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Versatile must allege that (1) he and a comparator inmate were treated differently and were similarly situated; and (2) the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Versatile fails to satisfy this threshold requirement for an equal protection claim. At most, Versatile vaguely suggests that other unidentified inmates at Lunenburg were notified of their parole hearing dates and had personal interviews. However, Versatile fails to identify an individual who was similarly situated to him that was treated differently. Thus, Versatile fails to satisfy the initial prong of the test. In sum, Versatile fails to state an equal protection claim. Accordingly, Claim C will be DISMISSED.

17

## V.    CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Judgment (ECF No. 18) will be GRANTED.  Versatile's claims will be DISMISSED, and his § 2254 Petition will be DENIED.  Versatile filed a Motion for a Temporary Restraining Order (ECF No. 21) but three weeks later moved to withdraw the Motion for Temporary Restraining Order.  (ECF No. 25.)  The request to withdraw (ECF No. 25) will be GRANTED, and the Motion for Temporary Restraining Order (ECF No. 21) will be DEEMED withdrawn.  The action will be DISMISSED.  A certificate of appealability will be DENIED.[14]

An appropriate Final Order shall accompany this Memorandum Opinion.

Date:  7/24/26
Richmond, Virginia

_____ /s/
M. Hannah Lauck
Chief United States District Judge

---

[14] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Versatile fails to meet this standard.